IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT BENCHOFF, | : | CIVIL ACTION NO. 3:CV-11-1106 |
| | : | |
| Plaintiff | : | (Judge Mannion) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| DIANE YALE, *et al.*, | : | |
| | : | |
| Defendants | : | |

**REPORT AND RECOMMENDATION**

## I.  Background.

On June 9, 2011, Plaintiff Robert Benchoff, an inmate at the State Correctional Institution at Dallas ("SCI-Dallas), Dallas, Pennsylvania, filed, *pro se*, this action stating that it was brought pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 2254. (Doc. 1)  Also, on June 9, 2011, Plaintiff filed a Motion to proceed *In Forma Pauperis*. (Doc. 2).[1]  Additionally, Plaintiff submitted a Prisoner Authorization form allowing the prison to submit a copy of his trust fund account to the court and approving the entire filing fee to be deducted from his inmate account.  (Doc. 3).  Plaintiff's Complaint was a lengthy 43-page, 89-paragraph typed pleading.  Plaintiff also submitted numerous Exhibits labeled A-K.  (Doc. 1).

This Court has jurisdiction over Plaintiff's civil rights action pursuant to 28 U.S.C. § 1331 and § 1346.  Plaintiff stated that he was also seeking §2254 habeas relief insofar as he was alleging that

---

[1]We note that Plaintiff Benchoff has filed a number of actions with this Court, to wit: *Benchoff v. Colleran*, Civil No. 02-CV-0934; *Benchoff v. Colleran*,  Civil No. 02-CV-1885; *Benchoff v. Colleran, et al.,*  Civil No. 02-CV-0740; *Benchoff v. Colleran, et al.,* Civil No. 02-CV-1242.

1

Defendants misclassified him as a violent offender for purposes of parole and denied him parole. Plaintiff stated that he could not obtain relief for his alleged wrongful incarceration claim in a §1983 action. (*Id.*, p. 2).

Plaintiff named the following eight (8) Defendants: PA DOC Secretary of Corrections, John Wetzel; PA DOC Director of the Bureau of Inmate Services, Andrea Priori-Meintel; Supervisor of Records, SCI-Dallas, Diane Yale; Chairman of the Pennsylvania Board of Probation and Parole ("PA Board"), Catherine McVey (later replaced by Michael Potteiger when he assumed the position of Chairman); Member of the Pennsylvania Board of Probation and Parole, Michael Green; Member of the Pennsylvania Board of Probation and Parole, John Doe 1; Member of the Pennsylvania Board of Probation and Parole, John Doe 2; and Commonwealth of PA Victim Advocate, Carole Lavery.[2] (Doc. 1, pp. 5-8). Plaintiff sued all eight (8) Defendants only in their official capacities. (*Id.*).

Plaintiff indicated that he exhausted all his administrative remedies with respect to his present claims.[3] (Doc. 1, p. 32).

---

[2]The Plaintiff classifies the Defendants (excluding Defendant Lavery) into two categories based upon their position held. Defendants Wetzel, Priori-Meintel and Yale were referred to by the Plaintiff as the "DEPARTMENT," namely, the PA DOC. (Doc. 1, p. 6). Defendants McVey, Green, Doe-1 and Doe-2 were referred to by the Plaintiff as the "BOARD," namely, the PA Board. (Doc. 1, p. 8).

The Plaintiff stated that Defendants John Doe 1 and John Doe 2 both participated in his 2010 parole hearing and he ascertained John Doe 1 to be Michael Green who had been added to this complaint so John Doe 1 was dismissed. (Docs. 105 & 117). John Doe 2 was identified as Pat McCrone and was added to the case on September 19, 2012. Defendant John Doe 2 was therefore dismissed as well.

[3]Plaintiff must exhaust his administrative remedies prior to filing a civil rights suit. *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004); *Woodford v. Ngo*, 126 S.Ct. 2378 (2006). In *Porter*

On June 10, 2011, a Standing Practice Order was sent to the Plaintiff which included a copy of the Local Rules of this Court. (Doc. 4). On June 13, 2011, an Administrative Order was sent to Warden Wetzel. (Doc. 5).

As mentioned, Plaintiff also attached 11 Exhibits, A-K, (totaling 48 pages) to his Complaint (Doc. 1-1), including: 1) state court sentencing orders for interference of child custody and for burglary (shown to run consecutively); 2) Plaintiff's sentence status summary, a memo from September 6, 1995 stating that burglary is an "assaultive offense;" 3) the Offender Violent Risk Typology pages 1-3 (including the list of violent offenses) dated April 2, 2009; 4) A bar graph showing "Percent Paroled Violent Offense Classified" taken from p. 13 of the 2006 Annual Report by the Pennsylvania Board of Probation and Parole; and 5) an Inmate's Request to Staff Member directed to Defendant Yale and the answer from an unknown records specialist. (Doc. 1-1).

On August 11, 2011, we screened Plaintiff 's Complaint as required by the PLRA and issued a Report and Recommendation ("R&R"). (Doc. 9). We recommended that the Plaintiff Benchoff's constitutional claims against DOC supervisory Defendants Wetzel, Priori-Meintel and Lavery be dismissed due to their lack of personal involvement. Additionally, we recommended that the Plaintiff's constitutional claims against Defendants Yale, McVey, Green, Doe -1, and Doe -2 be allowed to proceed. Further, we recommended that Plaintiff's habeas claims be dismissed without

---

v. *Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prisons conditions, including civil rights actions or actions brought pursuant to any other federal law. The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* However, Defendants have the burden to plead exhaustion as an affirmative defense. *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

prejudice to re-file them in a § 2254 habeas petition after Plaintiff exhausted his state court remedies. Finally, we recommended that Plaintiff's case be recommitted to the undersigned for further proceedings, including directing service of Plaintiff's Complaint on the remaining five (5) Defendants.

On August 30, 2011, Plaintiff filed a Motion for leave of Court to amend his Complaint and a support brief. (Docs. 10 &11).

On November 3, 2011, the Court adopted our R&R, and dismissed without prejudice Defendants Wetzel, Priori-Meintel and Lavery as well as Plaintiff 's habeas claims. The Court also granted Plaintiff's Motion for leave of Court to amend his Complaint. (Doc. 22).

On November 17, 2011, Plaintiff filed his Amended Complaint. (Doc. 24). Plaintiff named as Defendants: Yale; Norman Demming, DOC Classification and Program Manager; Lloyd White, PA Board Acting Chairman (later replaced by Michael Potteiger when he assumed the position of Chairman); Green; Doe -1 (later dismissed since this Defendant was Michael Green who was already a Defendant); and Doe -2 (later identified as Pat McCrone).

On November 27, 2011, we issued an Order and granted Plaintiff's in forma pauperis Motion and directed service of Plaintiff's Amended Complaint on Defendants. (Doc. 27). Defendants were served.

After being granted an extension of time, Defendants jointly filed their Answer to Plaintiff's Amended Complaint on February 27, 2012. (Doc. 65). Discovery then ensued.

Plaintiff filed a Motion for Partial Summary Judgment on August 28, 2012. **(Doc. 107)**. On that same day, he filed his Brief in Support of his Motion and his Statement of Material Facts

4

("SMF"). (Docs. 108 & 109). Defendants filed their Response to Plaintiff 's SMF and their Brief in Opposition to Plaintiff's Motion for Partial Summary Judgment on November 20, 2012. (Docs. 139 & 140). Plaintiff filed a Reply Brief to Defendants' Brief in Opposition with an Exhibit (Plaintiff 's December 19, 2006 Affidavit regarding the October 31, 2006 parole decision of the PA Board) as well as a Reply to Defendants' Response to his SMF on December 7, 2012. (Docs. 144, 145 & 146).

Also, on August 28, 2012, Plaintiff filed a Motion for Preliminary Injunction which was denied by the Court on September 14, 2012. (Docs. 110, 118 & 119). In its Memorandum denying Plaintiff's Injunction Motion, the Court held that "Plaintiff is unable to establish a likelihood of success on the merits [of any of his claims]." (Doc. 118, p. 7). The Court found that the DOC properly aggregated Plaintiff's consecutive sentences as mandated by 42 Pa.C.S. § 9757, and that since Plaintiff's sentences were aggregated, none of his sentences are expired. (*Id.*, pp. 5 & 7). The Court further found that "the DC-16 transcript accurately shows that Plaintiff 's instant offenses are burglary and interference with the custody of children because he is serving one aggregated sentence for those two crimes that will not expire until December 16, 2026." Thus, the Court found that, "the Board did not violate Plaintiff's substantive due process rights by utilizing the DC-16 in its decision to deny [Plaintiff] parole." (Doc. 118, pp. 6-7). Additionally, the Court found that even if Plaintiff 's two sentences for interference with custody of children were listed as expired on his DC-16 transcript, "[t]here is no indication that the Board based its decision in any way on whether his sentences for interference with custody of children were active or expired. Therefore, the Court concluded that "Plaintiff cannot prove the likelihood of his success on the merits in any

5

fashion." (*Id.*, p. 8). In fact, the Court in denying Plaintiff 's Injunction Motion relied upon much of the same evidence that was submitted by parties with respect to the pending cross-motions for summary judgment.

In his forty-three page typed original Complaint, Plaintiff essentially alleged that his constitutional rights under the *Ex Post Facto* Clause and the Due Process Clause were violated by the Defendants and he asserted three (3) separate counts. (Doc. 1, pp. 14, 27 and 36). These alleged constitutional violations stemmed from the Plaintiff being denied parole at his 2010 parole hearing after his classification as an offender was changed in 1995 from "non-violent" to "violent" based on amended parole criteria enacted in 1996 after his conviction and applied retroactively to him. In his first claim, Count I, Plaintiff averred that Defendants Wetzel, Priori-Meintel, Yale, McVey, Green (Doe-1), and McCrone (Doe-2) violated the *Ex Post Facto* Clause of the United States Constitution and in doing so violated his Fourteenth Amendment Due Process rights. (Doc. 1, p. 9). Plaintiff claimed that the Defendants retroactively applied amended parole rules adopted in 1995 to reclassify him as a "violent" offender even though he was classified as a "non-violent" offender when he was sentenced in 1994. (*Id.*). Plaintiff averred that this unlawful reclassification by the Defendants increased the punishment for the crime he committed and "increased the punishment annexed to the crime at the time of the crime's commission." (*Id.*).

In his second claim, Count II, Plaintiff averred that Defendants Wetzel, Priori-Meintel, Yale, MeVey, Green (Doe-1), and McCrone (Doe-2) violated his Fourteenth Amendment Due Process rights since they failed to properly execute Plaintiff's sequence of consecutively imposed sentences

by failing to give him credit for time served in custody.[4]  (*Id*.).  As a result, Plaintiff alleged that this violation has caused him to be confined in prison in excess of the maximum term imposed by the sentencing court.  (*Id*. at 10).  Plaintiff further averred that the DOC Defendants  violated his Due Process rights by providing false and improper sentence status information to the PA Parole Board for its use in Plaintiff's parole hearing.  (*Id*.).

In his third claim, Count III,  Plaintiff averred that Defendants McVey, Green (Doe-1), and McCrone (Doe-2) and Carol Lavery violated his Fourteenth Amendment Due Process rights by improperly considering his sentences for Interference of Child Custody ("IOC") as an "active-instant offence."[5]  (*Id*.).  Plaintiff alleged that the PA Board Defendants used his expired IOC sentences  to involve Defendant Lavery, the Victim Advocate, and invoke Victim Rights Legislation, even though the Board Defendants and Defendant Lavery lacked the necessary jurisdiction to invoke the requirements of the stated legislation.  Thus, Plaintiff alleged that this improper information caused the PA Board to  deny him parole.  (*Id*.).

In his original Prayer for Relief, the Plaintiff requested the following declaratory relief with respect to his § 1983 claims:

> (1) Issue an Order adjudicating and declaring that Plaintiff is to be reclassified as a non-violent offender.

---

[4]Plaintiff also stated that his Claim II was based on a violation of his Fifth Amendment due process rights, but as there were no federal actors in this claim. Thus, this assertion was incorrect.  *See Leventry v. Watts,* 2007 WL 1469038, *2 (W.D. Pa. 5-17-07).

[5]Plaintiff contended that he had served the full maximum prison term for his sentences of Interference of Custody of Children conviction and, that these sentences should have been in the "Completed Criminal History" portion of his sentence status document and he should not have been listed as  actively-serving these sentences.  (Doc. 1, p. 10).

(2) Issue an Order adjudicating and declaring that Plaintiff's sentence status document be updated an (sic) amended to indicate the expiration of sentences for Interference of Custody.

(3) Appoint a Master to oversee Discovery processes of privileged and confidential material held by the BOARD such as, but not limited to the number of affirmative votes received from 2000 to the present time.

(4) Issue an Order adjudiging (sic) and declaring that the Defendant BOARD review Plaintiff for release on parole within a reasonable amount of time and consistent with this Court's finding of fact.

(5) Plaintiff seeks any other relief, developed by the evidence consistent with the allegations pled herein, which is necessary or expedient for implementing any corrective action that has been specifically requested.

(6) Upon attorney praecipe, Plaintiff seeks reimbursement of full attorney fees pursuant to federal law for all claims cognizable under 42 U.S.C. § 1983. Plaintiff seeks reimbursement of actual costs for pro-se filing fees, and associated costs of postage, copies, etc.

(Doc. 1, pp. 41-42).

As stated above, Plaintiff filed a Motion for Partial Summary Judgment on August 28, 2012. **(Doc. 107).** Plaintiff claims "there are no material facts in dispute regarding his retroactive classification as a violent offender, and that he has been irreparably harmed by the use of the violent offender label in all administrative processes and hearings held by the Department of Corrections (D.O.C.) and the Board of Probation and Parole (Board)." (Doc. 107, ¶ 2). Plaintiff claims that he might have already been granted parole if he were classified as a non-violent offender, as he contends he should be classified, because he would have required fewer votes from the PA Board members for release. (Doc. 107, ¶ 3). Plaintiff was not sure whether he would have been released because the PA Board did not disclose how many votes he received. (*Id.*).

Defendants' evidence shows that Plaintiff was unanimously denied parole. (Doc. 159-1, ¶ 9).

On August 28, 2012, Plaintiff filed 28 Exhibits in support of his Injunction Motion (Docs. 110 & 115). Plaintiff included the following documents: 1) 37 Pa. Code §63.1 Granting of parole and 37 Pa. Code § 63.2 Legal custody (Doc. 115-1); 2) Pennsylvania Board of Parole Decision Instrument (Doc. 115-2); 3) Plaintiff's Sentencing Order from December 1995 for 12-72 months for the first count of interference with custody of a child (Doc. 115-3); 4) Plaintiff's Sentencing Order from December 13, 1995 for a consecutive 12-72 months for a second count of interference with custody of a child (Doc. 115-4); 5) Plaintiff's Sentencing Order from December 13, 1995 for 48-240 months for Burglary to run consecutive to the sentences for interference with the custody of a child (Doc. 115-5); 6) a subsequent Sentencing Order dated 10 March 1998 (Doc. 115-6); 7) a sentence status summary that shows an effective date of December 16, 1994, a minimum date of December 16, 2000, and a maximum date of December 16, 2026 (Doc. 115-7); 8) Plaintiff's Inmate Request to Staff Member dated June 15, 2009 along with responses from Superintendent Klopotoski, Chief Grievance Officer Dorina Varner, and Defendant Yale (Doc. 115-8); 9) § 11.103 Definitions (Doc. 115-9); 10) § 11.201 Rights (Doc. 115-10); 11) § 9757 Consecutive sentences of total confinement for multiple offenses (Doc. 115-11); 12) § 9760 Credit for time served (Doc. 115-12); 13) § 9761 Computation and order of service of sentences (Doc. 115-13); 14) another grievance response from Defendant Yale (Doc. 115-14); 15) another response from Superintendent Klopotoski (Doc. 115-15); 16) a job description of a Corrections Record Supervisor (Doc. 115-16); 17) 11.5.1 Records Office Procedure Manual Section 4 - DC forms (Doc. 115-17); a job description for a Corrections Classification and Program Manager (Doc. 115-18); 19) General Assembly of

9

Pennsylvania House Bill No. 93 (from Special Session No. 1 of 1995) (Doc. 115-19); 20) another copy of that same Bill with different revisions (Doc. 115-20); 21) a letter and a copy of the list of standing committees from the Commonwealth Legislature in 1995 and 1996 (Doc. 115-21); 22) a slip copy of *Barnes v. Wenerowicz*, 280 F.R.D. 206 (E.D. Pa. 2012); 23) Defendant Michael Potteiger's Response to Plaintiff's Interrogatories including a Violent/Sexual Crimes Chart (Doc. 115-23); 24) an additional copy of Pennsylvania Act No. 1995-21 (SS1) from House Bill 93 (Doc. 115-24); 25) the history of House Bill 93 (Doc. 115-25); 26) a fourth document relating to House Bill 93 (Doc. 115-26); 27) the Commonwealth's Answer to Plaintiff's Amended Complaint (Doc. 115-27); and 28) a letter from Plaintiff's brother to Board Chairman Catherine McVey (Doc. 115-28).

Remaining Defendants, Demming, Green, McCrone, Potteiger and Yale, filed their own Motion for Summary Judgment on May 24, 2013. **(Doc. 153)**. They filed a Brief in Support of their Motion as well as Exhibits and their SMF on June 11, 2013. (Docs. 158, 159 & 161). Plaintiff filed his Opposition Brief on July 1, 2013. (Doc. 164). Plaintiff concurred with Defendants' statement of the facts of his case. Defendants did not file a Reply Brief.

Both Summary Judgment Motions (Docs. 107 & 153) are ripe for disposition. We now issue this Report and Recommendation regarding both Motions.

## III.  Section 1983 Standard.

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements:  (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States. *Parratt v. Taylor*, 451

U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993); *Beattie v. Dept. of Corrections SCI-Mahanoy*, 2009 WL 533051, *3 (M.D. Pa.). Further, Section 1983 is not a source of substantive rights. Rather, it is a means to redress violations of federal law by state actors. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).[6] *See also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa. 2005).

It is well established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*. It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement. *Id.* Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id.; Innis v. Wilson*, 2009 WL 1608502, *2 (3d Cir. 2009). As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

*See also Beattie v. Dept. of Corrections SCI-Mahanoy*, 2009 WL 533051,*3("a prerequisite for a

---

[6]Plaintiff stated in his original pleading that Defendants were employees of the Commonwealth of Pennsylvania, namely the Department of Corrections ("DOC") and the Board of Probation and Parole. (Doc. 1, pp. 5-8). This is sufficient to show that all Defendants are state actors.

11

viable civil rights claim is that a Defendant directed, or knew of and acquiesced in, the deprivation of a Plaintiff's constitutional rights.")(citing *Rode, supra)*.

## IV. Summary Judgment Standard.

A motion for summary judgment may not be granted unless the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. The court may grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). An issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." *Childers v. Joseph*, 842 F.2d 689, 693-694 (3d Cir. 1988) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). A fact is "material" if proof of its existence or non-existence could affect the outcome of the action pursuant to the governing law. *Anderson*, 477 U.S. at 248. "Facts that could alter the outcome are material facts." *Charlton v. Aramus Bd. of Educ.*, 25 F. 3d 194, 197 (3d Cir.), *cert. denied*, 513 U.S. 1022 (1994).

The burden of proving that there is no genuine issue of material fact is initially upon the movant. *Forms, Inc. v. American Standard, Inc.*, 546 F. Supp. 314, 320 (E.D. Pa. 1982), *aff'd mem.* 725 F.2d 667 (3d Cir. 1983). Upon such a showing, the burden shifts to the nonmoving party. *Id*. The nonmoving party is required to go beyond the pleadings and by affidavits or by "depositions, answers to interrogatories and admissions on file" designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

In determining whether an issue of material fact exists, the court must consider the

evidence in the light most favorable to the nonmoving party. *White v. Westinghouse Electric Company*, 862 F.2d 56, 59 (3d Cir. 1988). In doing so, the court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. *Id.*, quoting *Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir. 1985), *cert. denied*, 474 U.S. 1010 (1985); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976) *cert. denied*, 429 U.S. 1038 (1977).

Under Rule 56 summary judgment must be entered where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Moreover, the Third Circuit has indicated that "although the party opposing summary judgment is entitled to 'the benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact,' and 'cannot rest solely on assertions made in the pleadings, legal memorandum or oral argument.'" *Goode v. Nash*, 2007 WL 2068365 (3d Cir. 2007)(Non-Precedential)(citation omitted).

Thus, "summary judgment is proper, when, viewing the evidence in the light most favorable to the non-movant, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Anderson v. General Motors*, 2009 WL 237247, *2 (3d Cir.)(citation omitted); *Page v. Trustees of Univ. of Pennsylvania*, 222 Fed. Appx. 144 at 145 (3d Cir. 2007) (the court must "view the facts in the light most favorable to the party opposing the [summary judgment] motion when making [its] determination."); *Burlington v. News Corp.*, 759

F.Supp. 2d at 589-90. "Material facts" are those which might affect the outcome of the suit. *Justofin v. Metropolitan Life Ins. Co.*, 372 F.3d 517, 521 (3d Cir. 2004).

## V. Statement of Undisputed Facts.

In 1995, Plaintiff pled guilty to two counts of interference with the custody of a child and one count of burglary. (Doc. 24, ¶ 23). Plaintiff was sentenced to an aggregated term of a minimum of six years to a maximum of thirty-two years in prison. (*Id.*, ¶ 26). This is a result of three consecutive sentences: two counts of Interference of Child Custody, and one count of Burglary (*Id.*). Plaintiff was sentenced consecutively to one to six years for both counts of IOC. (*Id.*). Plaintiff was also sentenced consecutively to four (4) to twenty (20) years for Burglary (*Id.*). The date Plaintiff's sentence commenced was December 16, 1994. (Doc. 161, ¶ 4). Plaintiff is currently serving his aggregated six to thirty-two year prison sentence. (Docs. 107, 140).

As previously stated, the Plaintiff's sentences were ordered to run consecutively, so the DOC aggregated his sentences pursuant to 42 Pa. C.S.A. §9757. (Doc. 140, p. 5). On July 20, 2009, Plaintiff filed an Official Inmate Grievance regarding what he believed to be a retroactive change of parole law that affected him negatively. (Doc. 115-8, p. 7). After his initial grievance was denied, Plaintiff sent a letter to Superintendent Klopotoski on August 11, 2009, that warned Klopotoski if Plaintiff won the case, it would be exceedingly problematic for prison records so the Defendants should try to resolve the matter quickly. (Doc. 115-8, p. 11). Defendant Yale wrote an Inmate Grievance Initial Review Response on August 18, 2009. (Doc. 115-8, p. 14). Defendant Yale attempted to explain to Plaintiff that he was serving one aggregated sentence and that the Parole Board saw him several times since his minimum date. (*Id.*). Defendant Yale

stated that Plaintiff was denied parole based on his denial or minimization of his offenses. (*Id*.).

The Commonwealth of Pennsylvania uses 42 Pa. C.S.A. §9714(g) to define "violent offenses and "crimes of violence" (Doc. 115, Attachment #23, ¶ 3). "Section 9714(g) did not include Burglary as a crime of violence at the time that [Plaintiff] committed his Burglary on December 25, 1994." (Doc. 140, p. 3). The PA Parole Amendment in question to the statute became effective near the end of 1995. (Doc. 144, p. 2).

On July 8, 2010, Plaintiff had a parole hearing before PA Parole Hearing Examiner Pat McCrone and Board Member Michael Green. (Doc. 159-1, ¶ 8). Plaintiff was classified as a violent offender at the time of his 2010 parole hearing. (Doc. 115, Attachment #23, ¶ 9). On August 13, 2010, Plaintiff was unanimously denied parole in a decision based on: 1) his risk to the community as indicated by reports, evaluations and assessments; 2) his minimization of his offenses; and 3) the negative recommendation of the prosecutor. (Doc. 159-1**,** pp. 3, 7 & Doc. 161, ¶'s 6-9). The PA Board indicated that when Plaintiff had his next parole hearing, it would consider "whether [Plaintiff had] maintained a favorable recommendation for parole from the [PA DOC]" and "whether [Plaintiff had] maintained a clear conduct record." (Doc. 161, ¶ 10).

**VI.    Discussion.**

1. *Plaintiff's Motion for Partial Summary Judgment (Doc. 107)*

Plaintiff asserts three separate counts in relation to alleged violations of the *Ex Post Facto* Clause and his Fourteenth Amendment Due Process rights by the Defendants. We find that Plaintiff lacks sufficient factual support to prove that there are no disputed material facts regarding his claims.

In his first Count, the Plaintiff stated that Defendants Yale, McVey, Green (formerly Doe-1), and McCrone (formerly Doe-2) violated his Fourteenth Amendment rights as well as the *Ex Post Facto* Clause of the United States Constitution by improperly using the 1996 Amendments to Pennsylvania's parole laws to his 1994 convictions and reclassifying him as a "violent offender."  Plaintiff asserts that PA's Sentencing Code, 42 Pa. C.S.A. §9714(g), did not include Burglary as a crime of violence when he committed his Burglary offense on December 25, 1994.  Plaintiff claimed that this increased his punishment. Defendants contend that "[§] 9714(g) addresses sentencing of violent offenders convicted of second or subsequent offenses and, thus was, and is inapplicable to Plaintiff, as a first-time violent offender." (Doc. 140, p. 3). Defendants state that §9714(g) did not increase Plaintiff's punishment and that Plaintiff's Exhibit G shows that the PA Board treated Burglary as a violent crime ("assaultive offense") prior to the statutory change.  (Doc. 115-23, p. 4; Doc. 1-1, p. 22).  In particular, Defendants state that "there is no evidence in the record that the Board did not consider Burglary a violent crime at the time Plaintiff committed the Burglary, at the time he was convicted of the Burglary, or at the time he was sentenced for the Burglary." (Doc. 140, p. 3).  Defendants further that "there is evidence in the record that, before September 6, 1995, the Board did consider Burglary as a violent crime. *See* Plaintiff 's Exhibit 19, #4." (*Id*.).   The Defendants seem to allege that the Board treated an "assaultive offense" similarly to a current "crime of violence." Additionally, Defendant Potteiger stated in his Response to Plaintiff's Interrogatories that he does not know when the treatment of Burglary by the Board changed.   (Doc. 115-13, p. 4).

We therefore agree with Defendants and  find insufficient evidence which would entitle

Plaintiff to summary judgment with respect to his ex post facto claim that the Board changed its policy as to its consideration of Burglary from non-violent to violent, which in turn, required inmates convicted of Burglary to receive more favorable votes by Board members to be granted parole. Further, as Defendants point out (Doc. 140, pp. 3-4), even if the was a change by the Board as to how it considered Burglary, *i.e.*, from non-violent to violent, after Plaintiff committed his Burglary offense, such a change was in policy and not in the law. Also, as Defendants state, this Court has previously decided this issue when it denied Plaintiff 's §2254 habeas petition raising an identical ex post facto claim. *See Benchoff v. Colleran*, Civil No. 03-0740, M.D. Pa., Doc. 106, p. 9. This Court also previously found that the procedural change in voting rules by the Board did not violate clearly established federal law.

In fact, we find that if there was such a change in policy by the Board, there is no dispute that it did not increase Plaintiff's punishment.

In *Farmer v. McVey*, 2011 WL 776210, *6-*7 (M.D. Pa. 2-28-11), the Court, addressing *Ex Post Facto* claims in the Pennsylvania parole context, stated:

> The ex post facto inquiry has two prongs: (1) whether there was a change in the law or policy which has been given retrospective effect, and (2) whether the offender was disadvantaged by the change." *Newman v. Beard,* 617 F.3d 775, 784 (3d Cir.2010) (internal quotation marks omitted). We have previously recognized that the 1996 amendments to the Parole Code did effect a change in the law; at the same time, however, we have rejected the notion that the application of these amendments represents a per se violation of the Ex Post Facto Clause. *See Richardson,* 423 F.3d at 291. Instead, to prevail, a prisoner must "show that as applied to his own sentence the law created a significant risk of increasing his punishment." *Newman,* 617 F.3d at 785 (internal quotation marks omitted). "A speculative and attenuated possibility of increasing the measure of punishment is not enough[.] *Id.* (internal quotation marks, alterations omitted)" As noted in *Newman,* the Circuit Court "denied an evidentiary

hearing in *Richardson* where the habeas petitioner 'provided no evidence, and for that matter ... proffered no allegations, that a 'significant risk' of increased punishment was created by the application of' new parole guidelines." *Newman,* 617 F.3d at 785 (quoting *Richardson,* 423 F.3d at 293)). *Newman* contrasted the grant of habeas relief in *Mickens-Thomas I* where the inmate "presented evidence that he had a significant likelihood of parole under the old policy but was denied parole under a new law, and that the Parole Board had paroled all similarly situated inmates before the change in law." *Newman,* 617 F.3d 775 (citing *Mickens-Thomas I,* 321 F.3d at 387). Finally, *Newman* noted the Circuit Court's observation that *"Mickens-Thomas I* 'may be an exceptional case because of the compelling nature of the evidence of prejudice.' " *Newman*, 617 F.3d at 785-86 (quoting *Richardson,* 423 F.3d at 293).

We find that the Parole Board may have changed its policy as to its consideration of Burglary from non-violent to violent after the Plaintiff committed his Burglary. However, it is clear from the record that this particular policy change did not negatively affect the Plaintiff. As Defendants state (Doc. 140, p. 5), "there is no evidence in the record that Plaintiff's [2010] parole application actually was affected by any purported policy change of the Board."   We find that there is no evidence  Plaintiff suffered from a "significant likelihood" of decreased chances of receiving parole as a result from the change in policy by the Board.  Additionally, the definition  of Burglary itself did not change. We therefore find that there is no dispute of material facts with regard to Plaintiff's *Ex Post Facto* claim and that Plaintiff 's 2010 application for parole was not affected by any policy change by the PA Board.  Thus, we will recommend that the Court deny Plaintiff's Motion for Partial Summary Judgment with respect to his ex post facto claim.

We also rely on the Court in *Farmer v. McVey*, 2011 WL 776210, *9, regarding Plaintiff's procedural due process claim against the Pennsylvania Board, which stated:

Again we turn to *Newman* to provide the framework for the consideration of an inmate's procedural due process claim as it applies to parole in Pennsylvania. "In analyzing a procedural due process claim, the first step is to determine whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment." *Shoats v. Horn,* 213 F.3d 140, 143 (3d Cir.2000) (citing *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). "Once we determine that the interest asserted is protected by the Due Process Clause, the question then becomes what process is due to protect it." *Id.* (citing *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 ... (1972)). The underlying liberty interest can be derived directly from the Due Process Clause or from the state's statutory scheme. *See Asquith v. Dep't of Corr.,* 186 F.3d 407, 409 (3d Cir.1999) ("A protected liberty interest may arise from only one of two sources: the Due Process Clause or the laws of a state.").

The Supreme Court has held that the Constitution does not establish a liberty interest in parole that invokes due process protection." *See Greenholtz v. Inmates of Neb. Penal & Corr. Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 ... (1979). Thus if [a convicted Pennsylvania plaintiff] has a liberty interest in some aspect of his parole, it must derive from the Pennsylvania parole statute. *See Sandin v. Conner,* 515 U.S. 472, 483-84, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) (recognizing that "States may ... create liberty interests which are protected by the Due Process Clause").

The relevant Pennsylvania parole statute provides that the Parole Board "shall have the power, and it shall be its duty, to consider applications for parole by a prisoner.... 61 P.S. § 331 .22 (2007), repealed by 2009 Pa. Laws 33. The statute further provides that the Parole Board shall have "the duty" to consider, inter alia, "[t]he general character and background of the prisoner" and "the conduct of the person while in prison and his physical, mental and behavior condition and history...." 61 P.S. § 331.19 (2007), repealed by 2009 Pa. Laws 33.FN6

> FN6. The statutes are currently codified at 61 Pa.C.S. §§ 6132 and 6135 (2010). *Newman,* 616 F.3d at 783 n. 5.

In his second Count, Plaintiff alleged that his Fourteenth Amendment due process rights and the Separation of Powers Doctrine have been violated by Defendants Yale, McVey, Green

19

and McCrone.  Plaintiff contends that these Defendants have failed to properly execute his sequence of consecutively imposed sentences and failed to afford him credit for time served in custody.  We find that Plaintiff's misunderstanding of aggregation leads him to the wrong conclusion.

As stated, Plaintiff was sentenced consecutively to one to six years for both counts of IOC.  Plaintiff was also sentenced consecutively to four (4) to twenty (20) years for Burglary.  The DOC aggregated Plaintiff 's sentences into a six to thirty-two year prison term.  We agree entirely with Defendants and find that Plaintiff's sentences were properly aggregated in accordance with 42 Pa. C.S.A. §9757.  As Defendants state, "[s]uch aggregation of consecutive sentences in Pennsylvania is 'automatic and mandatory'.  *Forbes v. Pa. Dept. Of Corrections*, 931 A.2d 88, 92 (Pa. Commw. Ct. 2007), *quoting Gillespie v. Dept. of Corrections*, 527 A.2d 1061, 1064 (Pa. Commw. Ct. 1987), appeal denied, 540 A.2d 535 (Pa. 1988)."  (Doc. 140, p. 5).  We further agree with Defendants that Plaintiff is not entitled to have his sentences "un-aggregated for purposes of determining which sentences he is still 'actively serving.'" (*Id*.).

By way of further explanation, "[a]ggregation of sentences is simply the combining of multiple consecutive sentences ... and treating them as if they were a single sentence."  12 West's Pa. Prac., Law of Probation and Parole § 4:9 (2012-2013 ed.).  Thus, we find that Defendants acted properly in combining Plaintiff's sentences into one six (6) to thirty two (32) year aggregate sentence.  We also find that there is no dispute as to the facts regarding Plaintiff's aggregate sentence, and that his three sentences was properly aggregated under §9757.  Thus, we find no violation of Plaintiff 's  due process rights and we will recommend the denial of

Plaintiff's Motion for Partial Summary Judgment with respect to this claim.

As to his third Count, Plaintiff alleges that Defendants McVey, Green (formerly Doe -1) and McCrone (formerly Doe -2) violated his Fourteenth Amendment due process rights by using an incorrect sentence status document during his 2010 parole hearing. (Docs. 107, 144, 146). Plaintiff claims that by using this expired document which indicated he was still actively serving his sentence for Interference of Child Custody, the Defendants improperly invoked the Pennsylvania Victim's Rights Legislation in violation of his due process rights. (*Id*.). We agree with Defendants (Doc. 140, p. 7) that Plaintiff is serving one aggregated sentence for all of his convictions. As stated, we concur with Defendants that "once the sentencing court imposes a consecutive sentence, aggregation with other consecutive sentences is automatic and mandatory under 42 Pa. C.S.A. §9757." *See Gillespie v. Department of Corrections*, 106 Pa. Cmwlth. 500, 508, 527 A.2d 1061, 1065, (1987). Further, we find that Defendant Yale is correct in pointing out that "none of [Plaintiff's] sentences are expired." (Doc. 113, Ex. A-A). The record indicates that the Board did not make a mistake with regard to Plaintiff's classification. We therefore find that there is no violation of Plaintiff's due process rights in using DC-16 in his 2010 parole hearing and he is not entitled to summary judgment on this claim.

While we find that there is no disputed material facts regarding Plaintiff's claims, we find that the undisputed material facts show Plaintiff's claims lack merit. We will therefore recommend that Plaintiff's Motion for Partial Summary Judgment be denied.

2. *Defendants' Motion for Summary Judgment (Doc. 153)*

As previously stated, Defendants filed their own cross-Motion for Summary Judgment on May 24, 2013. **(Doc. 153)**. Defendants also submitted a Declaration of PA Board Secretary Kimberly Barkley on June 11, 2013. (Doc. 159-1). As mentioned, Plaintiff claims in his Amended Complaint that the parole change (which we have found was only a change in policy and not in a law) that classified Burglary as a violent offense increased the affirmative votes by the Board members needed for his grant of parole from 2 to 5. (Doc. 24, ¶ 34). As previously stated, Plaintiff's 2010 parole hearing panel consisted of only two people, Defendants McCrone and Green. (Doc. 159-1). As Defendants state, "[t]his is the same procedure that was in place when [Plaintiff] committed his crimes." (Doc. 158, p. 7). Therefore, the undisputed evidence shows that Plaintiff only needed two affirmative votes to be granted parole. Additionally, there is no mention of Plaintiff as a violent offender in the reasoning used by the two stated Board members to deny Plaintiff parole. (Doc. 159-1). Therefore, no innocent act was made criminal and no punishment was increased retroactively for the Plaintiff as he alleges in this case. We find that there is no dispute as to the stated facts and that the evidence favors the Defendants.

Thus, we will recommend that summary judgment be entered for the Defendants regarding Plaintiff 's ex post facto claim of his Amended Complaint.[7]

We have also previously discussed Plaintiff's aggregation of sentence claim at length. Also, as discussed above, the District Court in denying Plaintiff's Injunction Motion he filed in

---

[7]We note that since we have fully discussed Plaintiff Benchoff's claims above regarding his Partial Summary Judgment Motion, we do not again fully discuss them with respect to Defendants' Summary Judgment Motion.

this case found Plaintiff's aggregation claim "to have [no] arguable merit in fact and law." (Doc. 118, p. 5). Because we have found the aggregation of Plaintiff's three sentences was proper, we will recommend summary judgment be entered for the Defendants on this claim of the Amended Complaint.

Additionally, because Plaintiff's sentences were properly aggregated, because none of Plaintiff's sentences are expired due to the aggregation of them and because there is no merit to Plaintiff 's contention that he was not actively serving his two sentences for interference with child custody, there is no merit to Plaintiff 's due process claim regarding the invocation of the "Crime Victim Rights Legislation." Thus, we will also recommend summary judgment for the Defendants on this claim of the Amended Complaint.

Finally, we agree with Defendants that there is no evidence showing Defendant Demming and Defendant Potteiger had sufficient personal involvement with respect to Plaintiff 's instant constitutional claims. (Doc. 158, p. 12). Plaintiff alleged that Defendant Demming was Defendant Yale's supervisory and Defendant Potteiger is the Chairman of the PA Board. As Defendants correctly point out, "[t]here is no evidence that Defendant Demming participated in any decision regarding the aggregation of [Plaintiff' s] sentences or his designation as a violent offender." Also, as Defendants state, "there is no evidence that Defendant Potteiger (or his predecessor) participated in [Plaintiff 's] 2010 parole review." (*Id*.).

We agree with Defendants that the evidence shows Demming and Potteiger were not personally involved with Plaintiff's claims and, that Plaintiff named these two supervisor officials solely based on their positions and based on the doctrine of *respondent superior*.

The Court in *Rogers v. U.S.,* 696 F.Supp.2d 472, 488 (W.D. Pa. 2010), repeated the personal involvement necessary in civil rights action, and stated:

> When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct. *Chinchello v. Fenton,* 805 F.2d 126, 133 (3d Cir.1986). Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." *Id.* quoting *Brown v. Grabowski,* 922 F.2d 1097, 1120 (3d Cir.1990), *cert. denied,* 501 U.S. 1218, 111 S.Ct. 2827, 115 L.Ed.2d 997 (1991). The supervisor must be personally involved in the alleged misconduct. *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988). Section 1983 [or 1331] liability cannot be predicated solely on *respondeat superior. Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *see also Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (superiors of line officers who act in violation of constitutional rights may not be held liable on a theory of vicarious liability merely because the superior had a right to control the line officer's action); *Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1293-1295 (3d Cir.1997) (to hold police chief liable under § 1983 [or1331] for violating female subordinate officer's rights, she was required to prove that he personally participated in violating the her rights, that he directed others to violate her rights, or that he had knowledge of and acquiesced in his subordinates' violations). If a grievance official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official. *Rode,* 845 F.2d at 1208; *Cooper v. Beard,* 2006 WL 3208783 at *14 (E.D.Pa. Nov. 2, 2006).

Based on the above-detailed evidence, it is clear that Plaintiff failed to establish the requisite personal involvement with regards to his constitutional claims as against Defendants Demming and Potteiger. The undisputed evidence shows that these two Defendants were not involved with any wrongdoing alleged by Plaintiff in his Amended Complaint.

Therefore, because the evidence shows that Plaintiff has named Defendants Demming

24

and Potteiger solely on the basis of *respondeat superior* which is not permissible in a civil rights action, we will recommend that summary judgment be entered in favor of Defendants Demming and Potteiger.

## VI.    Recommendation.

Based on the above, it is respectfully recommended that the Plaintiff Benchoff's Motion for Partial Summary Judgment **(Doc. 107)** be **DENIED.** It is also recommended that Defendants' Motion for Summary Judgment **(Doc. 153)** be **GRANTED** with respect to all of Plaintiff's claims in his Amended Complaint (Doc. 24)**.** Further, it is recommended that Judgment be entered in favor of Defendants Yale, Green, Demming, Potteiger and McCrone and, against Plaintiff Benchoff with respect to all of Plaintiff's claims in his Amended Complaint (Doc. 24).

Finally, it is recommended that this case be close.


    s/ Thomas M. Blewitt
    **THOMAS M. BLEWITT**
    **United States Magistrate Judge**



**Dated: August 16, 201**3

25

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT BENCHOFF, | : | CIVIL ACTION NO. 3:CV-11-1106 |
| | : | |
| Plaintiff | : | (Judge Mannion) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| DIANE YALE, *et al.*, | : | |
| | : | |
| Defendants | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **August 16 2013.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within fourteen (14)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely Objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.




_____     **s/ Thomas M. Blewitt**
                                    **THOMAS M. BLEWITT**
                                    **United States Magistrate Judge**




**Dated: August 16, 2013**